FILED

2010 Mar-30  PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

Max McGee, )
)
      Plaintiff, )
)
  v. )    CIVIL ACTION NO. 09-G-0032-NW
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
      Defendant. )

## <u>MEMORANDUM OPINION</u>

      The plaintiff, Max McGee, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

      The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end

this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

    (1)     whether the claimant is currently employed;

    (2)     whether she has a severe impairment;

    (3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

        In the instant case, the ALJ, Randall C. Stout, determined the plaintiff met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ found the plaintiff unable to perform his past relevant work.  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony.  Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

4

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must

be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The

Commissioner's reasons for refusing to credit a claimant's treating physician must be

supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen,

831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's

subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

The present case involves a 36-year-old plaintiff who alleges he is

disabled due to back pain caused by congenital stenosis and failed back surgery

syndrome.[1]  In September 2005 the plaintiff began complaining of a two-week

history of back pain.  An MRI revealed degenerative disk disease with mild

stenosis.  The plaintiff did not respond to conservative therapy and a decompressive

discectomy was performed on November 23, 2005.  Following surgery the plaintiff

continued to complain of pain.  On January 10, 2006, a myelogram showed

satisfactory surgery, but the plaintiff continued to complain of pain to his

neurosurgeon.  He was referred to an orthopod, Dr. Murphy.  Dr. Murphy saw the

plaintiff on January 17, 2006, and noted congenital stenosis.  The plaintiff was to

---

[1]  Failed back syndrome is not a single disease but a collection of conditions that
emerge after any number of surgeries or other treatments. Patients with failed back
syndrome have undergone one or more surgical procedures and continue to have
debilitating pain. This pain may be caused by recurring disc herniation, excessive
scarring, or injury to nerve roots.

http://www.einstein.edu/yourhealth/ortho/article6889.html#failedback.

undergo aggressive physical therapy, which apparently did not relieve his pain.  On March 7, 2006, he saw another orthopod, Dr. Seymour, and a discogram showed three levels causing problems.  Dr. Seymour did not believe more surgery would be helpful, and referred the plaintiff to a pain clinic.

The plaintiff did not seek treatment at the pain clinic, but continued to be treated by his primary care physician, Dr. Hollis.  On March 23, 2006, the plaintiff saw Dr. Hollis and ongoing lumbar pain with radiation into both legs was noted.  Record 256.  On August 28, 2006, the plaintiff saw Dr. Hollis, who found paralumbar tenderness, left static notch tenderness, and a positive SLR on the left.  Dr. Hollis prescribed Pentazocine, a narcotic pain medicine.  On September 15, 2006, Dr. Hollis's treatment note states the plaintiff did not fill the Pentazocine.  On November 22, 2006, the plaintiff saw Dr. Hollis after he reinjured his back while sorting clothes.  He was again prescribed Pentazocine.

The plaintiff saw Dr. Seymour on February 2, 2007, reporting he still had pain and was using a cane.  Dr. Seymour's treatment note indicates the plaintiff had not pursued treatment at the pain clinic.  Dr. Seymour noted that an epidural steroid injection would not be unreasonable.  Dr. Seymour thought "it would be worthwhile" to get the plaintiff into treatment at the pain clinic.

The last treatment note from Dr. Hollis is a handwritten addendum dated March 2, 2007.  The note states that the plaintiff had inadequate pain control

with Pentazocine. The treatment plan included a prescription for additional narcotic pain medications.

At his ALJ hearing the plaintiff testified that on an average day his pain ranged from 4 to 5 on a scale of 1 to 10 while taking his medication. Record 38. However, the plaintiff testified that every day, for two to three hours, his pain increased to 7 or 8 at some point during the day. Record 38. The plaintiff testified that when this occurred, he had to lie down or take extra pain medication. Record 38. He testified that if he took extra pain medication, it caused him to fall asleep. Record 38-39. The vocational expert testified that if the plaintiff experienced pain at a seven or eight level for two hours during the workday, it would "preclude the ability to maintain any gainful employment." Record 53. Therefore, based upon the vocational expert's testimony, the plaintiff would be disabled if he suffered pain at the level to which he testified. Unless the ALJ properly discredited the plaintiff's pain testimony, he would be disabled within the meaning of the Social Security Act.

The ALJ refused to credit the plaintiff's testimony about his pain and side effects from medication. The ALJ stated: "[T]here is no evidence that he has complained to any physician of such side effects, and the reduction of his pain level from seven or eight to four or five, as he stated, is consistent with good relief from medication." Record 22. The ALJ's credibility determination rests upon his conclusion that the plaintiff's pain was reduced by medication to a moderate level:

The undersigned thus finds it reasonable, given the claimant's diagnoses, his physicians' observations and his description of his daily activities and his functional abilities, that his pain is no more than moderate with medications.

Record 22.

Substantial evidence does not support the ALJ's articulated reasons for finding the plaintiff's pain testimony not credible. Although the ALJ stated that the plaintiff's pain medications reduced his pain, this ignores the treatment note from Dr. Gillis stating the plaintiff had inadequate pain control with Pentazocine. Record 262. It also is contradicted by the treatment notes from the plaintiff's treating orthopod, Dr. Seymour, who believed the plaintiff was a candidate for pain management on March 7, 2006. Record 186. Dr. Seymour found the plaintiff still complained of back pain on February 2, 2007, and noted that he was using a cane to move around. Record 253. Dr. Seymour found that the plaintiff was a good candidate for an epidural injection and stated that he would make arrangements to have the plaintiff seen at a pain management clinic. Record 253. These records from the plaintiff's treating physicians support his testimony. The ALJ gave no reason for not crediting either Dr. Gillis or Dr. Seymour.

The activities of daily living recited by the ALJ do not provide substantial evidence for the ALJ's refusal to credit the plaintiff's pain testimony. The ability to perform the limited activities noted by the ALJ does not rule out the

presence of disabling pain.  The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled.  In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability.  Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997).  As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee.  Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days.  Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.  . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.  In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled.  See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world.  Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ."  867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

   With the proper legal standards in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence.  Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true."  Hale, at 1012. Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

   DONE and ORDERED 30 March 2010.

         _____
       UNITED STATES DISTRICT JUDGE
         J. FOY GUIN, JR.